IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT JACKSON, | § | |
| ID #02377778, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:24-CV-2824-X-BW |
| | § | |
| DALLAS COUNTY DISTRICT | § | |
| ATTORNEY, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Prisoner's Civil Rights Complaint, received on November 7, 2024, and correspondence that the Court construes as a request to supplement the complaint, received on March 31, 2026. (Dkt. Nos. 3, 13.) The Court **GRANTS** the request to supplement the complaint (Dkt. No. 13) and has considered the supplement in its screening of this case. Based on the relevant filings and applicable law, the Court should **DISMISS** the complaint, as supplemented, with prejudice.

**I. BACKGROUND**

Robert Jackson, a state prisoner currently incarcerated at the Le Blanc Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"), filed this civil rights action against Dallas County District Attorney John Creuzot ("DA"), Dallas County Clerk John F. Warren ("County Clerk"), and Sherry

---

[1] By Special Order No. 3-251, this pro se case has been automatically referred for full case management.

C. Garrett, in connection with Garrett's alleged use of her appointment as an agent for Jackson under a durable power of attorney to improperly withdraw money from Jackson's bank account. (*See* Dkt. No. 3 at 3-4.)[2] On July 2, 2025, Jackson responded to a Magistrate Judge's Questionnaire ("MJQ") to further clarify his claims. (*See* Dkt. No. 11.)

According to Jackson, during his incarceration at the Dallas County Jail and before he was convicted and transferred to the TDCJ in February 2022, he received social security payments that were deposited into his checking account. (*See* Dkt. No. 3 at 6.) On July 1, 2022, he had over $31,000 in his account and by mid-August 2022, he only had approximately $3,500 in his account. (*See id.*; Dkt. No. 11 at 4-5, 7.) During this time, Garrett was Jackson's agent under a durable power of attorney that "had special instructions that the only time she was to access [Jackson's] account was to send [him] money and [he] would at a later time discuss how much [he] would pay her for doing this." (Dkt. No. 3 at 6; *see also* Dkt. No. 11 at 7.) Garrett improperly used the durable power of attorney to take the money from Jackson's account, and she has not sent him the money, told him where it is, or given him an itemized statement regarding where it was spent. (*See* Dkt. No. 3 at 4, 6.) Jackson sues Garrett for "violation of equal protection under the law 14th amendment of U.S. Constitution ag[a]inst theft." (Dkt. No. 11 at 5.)

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Jackson contacted DA three times in 2023 to request that DA prosecute Garrett for her actions.  (*See* Dkt. No. 3 at 4; Dkt. No. 11 at 2.)  Because DA did not respond to Jackson's requests for prosecution of Garrett, Jackson asserts that DA "failed to follow his oath of office to uphold the laws of Texas and the United States." (Dkt. No. 11 at 2; *see also* Dkt. No. 3 at 3-4.)  He sues DA in his official capacity under 42 U.S.C. § 1985 for "depriving me of equal protection under [] the laws I am grante[d] equal protection under state & federal laws to be free from theft of my money 14 Amendment of U.S. Constitution." (Dkt. No. 11 at 2.)

Jackson also wrote to County Clerk four times in 2024 asking "for judicial relief by a judge" under Section 751.251 of the Texas Estate Code.  (Dkt. No. 11 at 3.)  County Clerk replied asking for Jackson's case number.  (*See id.*)  Jackson contends that County Clerk "fail[ed] to process my request of judic[i]al relief 751.251" and failed to uphold his oath of office and Texas law.  (Dkt. No. 3 at 3; *see also* Dkt. No. 11 at 3.)  Jackson sues County Clerk in his official capacity under 42 U.S.C. § 1983 and § 1985 for violating his right "to have equal protection under federal law to be free from thef[t] of my money 14 Am[end]ment of U.S[.] Constitution." (Dkt. No. 11 at 3.)

Jackson asks the Court to "uphold [T]exas laws and have a state judge call Ms[.] Garrett to court and find out where all my money is." (Dkt. No. 11 at 5; *see also* Dkt. No. 3 at 4.)  He also seeks repayment of the approximately $28,000 Garrett allegedly took from his account and Garret's arrest and criminal prosecution for violation of various state laws.  (*See* Dkt. No. 11 at 5; Dkt. No. 13.)

## II.  PRELIMINARY SCREENING

Jackson is a prisoner who has been permitted to proceed in forma pauperis ("IFP") in this action.  (*See* Dkt. No. 5.)  As a prisoner seeking redress from state officers, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998).  Because Jackson is proceeding IFP, his complaint also is subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for sua sponte dismissal of a complaint, or any part of it, if the Court finds it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a claim upon which relief may be granted.  *Twombly*, 550 U.S. at 555.

## III.  SECTION 1983

Jackson expressly sues County Clerk under § 1983 for alleged violation of his constitutional equal protection rights; the Court liberally construes Jackson's

allegations in his complaint and MJQ responses as also suing DA and Garrett under § 1983.  (*See* Dkt. No. 11 at 2-5.)  That statute "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States[.]"  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Id.*  To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See, e.g., Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

## A.  Official Capacity

Jackson sues DA and County Clerk only in their official capacities.[3]  (*See* Dkt. No. 11 at 2-3.)  A claim against these Defendants in their official capacities is the same as a claim against the entity of which each is an agent, which in this case is Dallas County.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Olibas v. Dodson*, 593 F. App'x 412, 413 n.1 (5th Cir. 2015) ("[I]t is well-settled that claims against a municipal official in his official capacity are claims against the county.").

Municipalities, including counties and cities, may be liable under § 1983.  *See Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008).  A municipality may be liable under § 1983 only if the execution of one of its customs or policies deprives a plaintiff of his federally protected rights.  *See Monell v. Dep't of Soc.*

---

[3] Jackson's answers to an MJQ constitute an amendment to the complaint.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

*Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar 2, 2006) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). A municipality cannot be liable under a theory of respondeat superior, however. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). "The description of a policy or custom and its relationship to the underlying constitutional violation. . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "[A] complaint must contain either direct allegations on every

6

material point necessary to sustain a recovery. . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation and internal quotation marks omitted).

Here, Jackson does not identify a policymaker or allege any official policy or custom that resulted in the violation of his rights.  He therefore has failed to state a claim for municipal liability, and the Court should dismiss his official capacity claims against DA and County Clerk under § 1983 for failure to state a claim.

## B.  Individual Capacity

To the extent the Court can liberally construe Jackson's complaint and MJQ responses as asserting claims against DA and County Clerk in their individual capacities, his claims also fail.  Jackson's claims against DA and County Clerk are based on their failure to take action in connection with Garrett's alleged misconduct with Jackson's durable power of attorney.  (*See* Dkt. No. 3 at 3-4; Dkt. No. 11 at 2-3.) Specifically, Jackson complains that DA violated his equal protection rights by failing to investigate and prosecute Garrett and that County Clerk violated his equal protection rights by failing to process and grant his request for judicial relief.  (*See id.*)

In order to "state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class[,]' . . . or (b) he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir.

2012).  Here, Jackson alleges only that DA and County Clerk violated his equal protection rights by not taking action in his favor against Garrett.  Jackson has alleged neither that DA or County Clerk discriminated against him based on his membership in any protected class, nor that he was treated differently from any similarly situated individuals and that there was no rational basis for such treatment. He therefore has not stated a claim against DA and County Clerk for violation of his equal protection rights.

Further, regarding Jackson's claims against DA, a plaintiff has no constitutional right to have someone criminally prosecuted or investigated for alleged misconduct.  *See Autrey v. Mississippi*, 66 F. App'x 523, 2003 WL 21016025, at *1 (5th Cir. 2003); *Bogus v. Harris Cnty. Dist. Att'y*, No. H-19-3264, 2019 WL 5294320, at *3 (S.D. Tex. Oct. 17, 2019) ("Plaintiff enjoys no constitutional right to have [the county District Attorney] undertake such an investigation [into the plaintiff's claims of impropriety], and her failure to do so raises no constitutional issues.").  As to County Clerk, because Jackson fails to allege any facts showing that County Clerk's alleged actions caused Jackson any "hardship of constitutional magnitude." *Lewis v. City of Waxahachie*, 465 F. App'x 383, 384 (5th Cir. 2012) (dismissing § 1983 claim for failure to state a claim where the plaintiff alleged that county clerk failed to file motions and forward filings to correct court).  Jackson therefore fails to state a claim against both DA and County Clerk on these additional bases.

Accordingly, the Court should dismiss any § 1983 claims against DA and County Clerk in their individual capacities for failure to state a claim.

## C. Non-State Actor

Jackson sues Garrett for "violation of equal protection under the law 14th Amendment of U.S. Constitution against theft." (Dkt. No. 11 at 5.) He alleges that she failed "to abide by dur[]able power of attorney" through her theft of approximately $28,000 from Jackson's account. (Dkt. No. 3 at 3; *see also id.* at 4.)

As the Court has discussed, to prevail under § 1983, a plaintiff must establish that the defendant acted under color of state law in violating his rights. *See Daniels v. Williams*, 474 U.S. 327 (1986). A plaintiff can make this showing by demonstrating that the defendant's actions are "fairly attributable to the state." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation and internal quotation marks omitted). "Mere[] private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation and internal quotation marks omitted).

Here, according to Jackson, "[b]y becoming an attorney in fact of a durable power of attorney granted by Texas[, Garrett] therefore became an agent of the State of Texas." (Dkt. No. 11 at 4.) Jackson fails to identify any legal authority—and the Court has found none—to support his allegation that a private individual with power of attorney over another private individual is a state actor for purposes of § 1983. The Court also notes that private attorneys licensed by the state to practice law are not state actors for purposes of § 1983, even when they are retained to represent a government entity. *See, e.g.*, *Love v. City of Dallas,* No.3:22-CV-1496-E (BH), 2023 WL 5022294, at *5 (N.D. Tex. July 17, 2023) (citing cases), *rec. adopted*, 2023 WL

9

5025003 (N.D. Tex. Aug. 7, 2023).   It therefore follows that, like a private attorney or individual third party, Garrett is not rendered a state actor under § 1983 merely by virtue of having power of attorney over Jackson.  *See Wise v. Wilmoth*, No. 3:16-CV-1039-M-BH, 2017 WL 3267924, at *8 (N.D. Tex. July 3, 2017) (finding that defendant who was an "'Attorney in Fact under a Durable Power of Attorney'" was not a state actor for same reasons as a private attorney), *rec. adopted*, 2017 WL 3267727 (N.D. Tex. July 31, 2017).[4]

Because Jackson fails to allege facts to establish that Garrett, a private individual, acted under color of state law, the Court should dismiss any § 1983 claim against her for failure to state a claim.

### III.  SECTION 1985

Jackson also expressly sues DA and County Clerk under § 1985(3).[5]  (*See* Dkt. No. 11 at 2, 3, 8.)  In relevant part, § 1985 "proscribes conspiracies 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Gonzalez v. Gillis*, No. 21-60634, 2023 WL 3197061, at *4 (5th Cir. May 2, 2023) (citation omitted); *see also* 42 U.S.C. § 1985(3).  A viable § 1985(3) claim requires

---

[4] Although there are certain limited circumstances under which a private actor may be acting "under color of state law" or held to be a state actor for purposes of § 1983, Jackson has alleged no facts that would allow for a finding that any such scenario would apply here.  *See, e.g., Love*, 2023 WL 5022294, at *5 (discussing circumstances in which a private actor may be liable under § 1983).

[5] Subsections (1) and (2) of § 1985 prohibit, respectively, conspiracies preventing an officer from performing duties and conspiracies obstructing justice by intimidation of a court party, witness, or juror.  42 U.S.C. §§ 1985(1), (2).  None of Jackson's allegations implicate these subsections.

allegations showing that two or more individuals conspired and were motivated by racial animus. *See, e.g.*, *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("'[I]n this circuit. . . the only conspiracies actionable under section 1985(3) are those motivated by racial animus.'"); *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (listing elements of a § 1985 claim).

Here, Jackson has alleged no facts showing the existence of a conspiracy of any kind, much less one whose purpose was to deprive him of equal protection of the laws based on racial animus. Accordingly, the Court should dismiss Jackson's claims under § 1985 for failure to state a claim.

## IV. LEAVE TO AMEND

Notwithstanding a failure to plead sufficient facts, a pro se plaintiff ordinarily should be granted leave to amend his complaint before dismissal. *See Brewster v. Dretke,* 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not necessary, however, when the plaintiff has already pled his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017). A verified questionnaire response allows a plaintiff to plead his best case and is a valid way for a pro se plaintiff to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) ("Contrary to [the plaintiff's] argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint."). Because Jackson has already responded to an

11

MJQ to clarify his claims and filed a supplement to his complaint, he has pled his best case and further leave to amend is not warranted.

## V.  RECOMMENDATION

The Court should **DISMISS** the Prisoner's Civil Rights Complaint, received on November 7, 2024 (Dkt. No. 3) and as supplemented, with prejudice under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.  The Court should count this dismissal as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[6]

**SO RECOMMENDED** on April 10, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

---

[6] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

12

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).